By the Court.
 

 As we view this record, three questions are presented:
 

 First. The effect to be given the fact that the defendant at the time in question had not met the requirements of law and procured a license to practice as a chiropractor in this state, though a graduate of a recognized school of chiropractic, the question being whether the violation of that statute affords a basis for a charge of malpractice, or for the recovery of damages claimed to have resulted from the treatment complained of.
 

 The great weight of authority supports the view that such failure to procure a license does not in itself give rise to any right of recovery by the plaintiff, but only subjects the defendant to the penalty prescribed by the statute.
 
 Brown
 
 v.
 
 Shyne,
 
 242 N. Y., 176, 151 N. E., 197, 44 A. L. R., 1407, is undoubtedly the leading case upon this question. The syllabus reads: “It was error, however, for the trial court to charge the jury that it might infer negligence on the part of defendant, which produced injury to the plaintiff, from the fact that in treating the plaintiff, defendant was engaged in the practice of medicine contrary to and in violation of the Public Health Law of the state. In order to show that the plaintiff had been injured by defendant’s breach of the statutory duty, proof must be given that defendant in such treatment did not exercise the care and skill which would have been exercised by qualified practitioners within the state, and that such lack of skill and care caused the injury. Failure to obtain a license'as required by law gives rise to no remedy if it has caused no injury.”
 

 Other cases of like import may be cited holding that
 
 *287
 
 mere failure to procure a license cannot be regarded as a proximate cause of the injury. The ease of
 
 Janssen
 
 v.
 
 Mulder,
 
 232 Mich., 183, 205 N. W., 159, is another ease in point. It was there held as follows:
 

 “While a failure to comply with the registration statute might subject the defendant to a criminal prosecution, such failure, coupled with a showing of treatment given, is not in itself sufficient on which to base a charge of malpractice.
 
 To maintain such an action, the plaintiff must show that the result complained of wa-s due to negligence or unshillful treatment.
 
 While not registered, the defendant was a graduate of a chiropractic school. He but assumed to treat human ailments in accordance with the system taught in such school. This fact was well known to the plaintiff. The burden was' therefore cast upon her to show by competent evidence, not only that his treatment was injurious or not effective, but that the requisite care and skill was not exercised by him in administering it.” (Italics ours.)
 

 We are of the opinion that the ruling of the trial court in this particular was correct.
 

 Second. Physicians in the general practice were called as expert witnesses to give their opinions relative to the care and skill exercised by the defendant and the degree of care and skill required.
 

 The authorities quite generally support the view of the trial court that when a patient selects a doctor of a recognized school of treatment, he thereby adopts the kind of treatment common to that school; and the care, skill and diligence with which he is treated must be tested by the evidence of those who are trained and skilled with reference to the kind of treatment adopted by the patient.
 
 Nelson
 
 v.
 
 Dahl,
 
 174 Minn., 574, 219 N. W., 941;
 
 Janssen
 
 v.
 
 Mulder, supra,
 
 and cases cited. However, if the criterion by which the witness measures defendant’s treatment is that of the defendant’s own school of practice and the witness is otherwise
 
 *288
 
 qualified to testify, lie is not disqualified merely because he himself belongs to another school.
 
 Swanson
 
 v.
 
 Hood,
 
 99 Wash., 506, 70 P., 135, and cases cited.
 

 In the trial of the instant case, the medical witnesses, whose opinions were sought, were not asked as to, nor did they indicate, their knowledge of or experience with the practice and treatment involved iiy this case. In any event, there was no proffer made when objection to the questions propounded was sustained. The Court of Appeals specifically reversed the Court of Common Pleas for error in this particular. We are of the opinion that this was not warranted by the record. .
 

 Third. The third question involved is relative to the matter of diagnosis and particularly the failure to use X-ray as an aid in such diagnosis. Thrée physicians testified as to the physical condition of the plaintiff subsequent to the treatment administered by the defendant. They fiad the benefit of X-ray in reaching their conclusions. Two of them testified as to the conditions they found about December 5, 1934, while the examination of the other physician was not made until May, 1935. The treatment particularly complained of was given on November 22, 1934. The physicians referred to are in substantial accord in their announced finding of a sacroiliac dislocation or subluxation. The defendant testified upon the trial that upon her examination of the plaintiff prior to treatment she had found a similar condition and the treatment administered was for the purpose of remedying that condition. However, defendant’s testimony in that respect is challenged, there being evidence that her finding and diagnosis was not as she stated it after her attention had been directed to the X-ray plates. There is evidence in behalf of the plaintiff that defendant had previously diagnosed the trouble as a displaced vertebrae and, upon the occasion of the treatment complained of as severe and painful, stated that it was only
 
 *289
 
 the vertebrae going back into place and that plaintiff would be all right after having some more adjustments. Hence, there is some evidence that the failure to use X-ray resulted in an erroneous diagnosis, and evidence in the record indicates that the use of X-ray is required, it being difficult to diagnose such subluxation or dislocation without the employment of X-ray. It is complained, too, that the plaintiff was unduly restricted in her evidence respecting the subject of diagnosis. Diagnosis must be regarded as important as is the treatment to be administered, for faulty diagnosis may result in treatment which is not only not correctional and curative, but is positively harmful in character.
 

 For the reasons last indicated, the judgment of reversal by the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams, Myers and Gorman, JJ., concur.